IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MARISOL MICHEO ACEVEDO,<br><br>  Plaintiff,<br>vs.<br><br>STERICYCLE OF PUERTO RICO, INC.,<br><br>  Defendant. | CIVIL NO. 15-CV-1097 (JAG/SCC)<br><br>GENDER DISCRIMINATION; RETALIATION; WRONGFUL DISCHARGE; DAMAGES<br><br>TRIAL BY JURY DEMANDED |

**DEFENDANT STERICYCLE OF PUERTO RICO, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO STERICYCLE'S MOTION FOR SUMMARY JUDGMENT**

**TO THE HONORABLE COURT:**

**COMES NOW** Defendant Stericycle of Puerto Rico, Inc. ("Stericycle" or "Defendant"), through its undersigned counsel, and most respectfully submits the following Reply ("Reply") to Plaintiff's Opposition to Stericycle's Motion for Summary Judgment ("Opposition"):

**INTRODUCTION**

At the outset, Plaintiff concedes, as she must, that she has no viable claims for disability discrimination and retaliation under the Americans with Disabilities Act, as amended, and related Puerto Rico laws, and under the Family and Medical Leave Act. Consequently, she has informed the Court in her Opposition that she has voluntarily withdrawn such claims. *See* Opposition at 4, n.1.

Thus, Plaintiff's only remaining claims against Stericycle—and the sole claims she addresses in her Opposition—are: (i) gender discrimination under Title VII and Puerto Rico Law No. 100; (ii) retaliation under Title VII and Puerto Rico Law No. 115; and (iii) wrongful discharge under Puerto Rico Law No. 80. *See id.* These claims also must fail. Plaintiff acknowledges she has no direct evidence of gender discrimination, and the uncontested material facts do not establish that Plaintiff has otherwise established a *prima facie* case, let alone any

pretextual reason, sufficient to overcome the undisputed legitimate, non-discriminatory bases for Stericycle's actions. Likewise, Plaintiff's rambling and disjointed response to the motion for summary dismissal of her claims for retaliation amounts to nothing more than an improper request for this Court to act as a "super-personnel department" to second-guess each and every technical detail related to whether Stericycle followed the absolute letter of its progressive disciplinary process. Courts have consistently rejected this tactic as a way to defeat summary judgment. Lastly, Plaintiff does not—and cannot—rebut the ample evidence of "just cause" supporting her dismissal. Thus, Plaintiff has set forth no genuine issue of material fact precluding summary judgment on these remaining claims, and they, too, should be dismissed.

## ARGUMENT

**I. STERICYCLE IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S SEX (GENDER) DISCRIMINATION CLAIMS UNDER TITLE VII AND PUERTO RICO LAW NO. 100.**

Plaintiff's gender discrimination claim rests exclusively on her contention that Jorge Rodriguez ("Rodriguez"), not her, was promoted to the purported "Project Manager" position of the BioSystem Program, and "enjoyed an increase in [salary]." Plaintiff's contention that she has established a "pristine" *prima facie* case of gender discrimination is misplaced since the so-called decision to select Rodriguez for the Project Manager position did not constitute an adverse employment action.

As an initial matter, Plaintiff's Opposition does not effectively refute the fact that the BioSystem Project or Program Manager position did not exist at Stericycle. The uncontroverted facts establish that Stericycle did not and would not establish this position, including a commensurate salary level, until the amount of business obtained for this new program justified it. *See* Stericycle's Statement of Undisputed Material Facts ("SUMF") ¶¶ 26-28. Indeed, neither

Rodriguez nor Plaintiff were appointed to head the BioSystem program, which Osvaldo Santana ("Santana") oversaw. *See* SUMF ¶ 20.

Additionally, while Plaintiff points out that Rodriguez held himself out at times as holding a position with the title of Integrated Waste Stream Solutions ("IWSS") Program Manager, this does not act to create an adverse employment action *vis-à-vis* the Plaintiff. Instead, it still leaves Plaintiff to speculate about the duties that Stericycle would have assigned to this position and the pay it would provide for performing such duties, had this position ever formally existed. The mere existence of a title is not enough; there is no evidence that the salary that Rodriguez received during a portion of his employment at Stericycle, which was only slightly greater than Plaintiff's ($29,700 versus $27,000), was ever correlated to this alleged position. This is because it is again undisputed that Rodriguez's pay was a function of his prior promotion to the position of Transportation Supervisor (a promotion that Plaintiff expressly admits in her Opposition was not discriminatory). *See* Opposition at 29, n. 17. Plaintiff does not and cannot contend that Stericycle provided Rodriguez with any salary increase when he performed duties that Plaintiff ascribes to the Project Manager position; instead it simply took no action to reduce Rodriguez's salary when he moved from the Transportation Supervisor position. Plaintiff was not similarly situated. She previously never had been promoted to any other Stericycle position (nor does she contend she should have been) where she would have received a pay increase. *See Kosereis v. Rhode Island*, 331 F.3d 207, 214 (1st Cir. 2003) (requires showing that comparator is "similarly situated to [her] in all relevant respects").

Moreover, the few isolated instances where Plaintiff points out that Rodriguez took it upon himself to request Plaintiff to perform tasks related to certain aspects of the BioSystem Program do not support that there was an established management position to which Rodriguez was promoted over Plaintiff. As the testimony provided by Rodriguez established, and which

Plaintiff otherwise liberally quotes in her Opposition, all of the sales team personnel were working together without an established organizational structure to try and get this new program up and running.  *See* SUMF ¶¶ 23, 25 (Company relied on all sales team members as resources during the initial stages of the BioSystem Program and "everybody had to [do] different duties" and "cover" for each other, since there was not an employee for every position).  Even more, contrary to Plaintiff's assertions that Rodriguez held a supervisory role over her, it is undisputed—and Rodriguez himself attested in his deposition—that he was never assigned to supervise Plaintiff or any other sales representatives or personnel.  *See* SUMF ¶ 39.

Therefore, Rodriguez was never selected over Plaintiff for any position that resulted or would have resulted in a "*serious and material* change in the terms, conditions or privileges of [her] employment."  *Rodriguez-Machado v. Dep't of Veterans Affairs*, 845 F. Supp. 2d 429, 439 (D.P.R. 2012) (emphasis added) (citation omitted).  In fact, it remains undisputed that both Rodriguez and Plaintiff held themselves out to have "lead" roles within the BioSystem Program—Rodriguez as manager within IWSS and Plaintiff as supervisor within SMS, both of which are branches of the BioSystem Program.  *See* SUMF ¶ 28.  Neither received a promotion to these positions, and neither received additional pay on account of these "lead" roles since, again, it is undisputed that the BioSystem Program had not reached a critical threshold for the creation of additional supervisory or managerial positions.  *See* SUMF ¶¶ 26-28, 38.

Assuming *arguendo* that Plaintiff had established a *prima facie* case, summary judgment still must be granted because Stericycle has articulated legitimate non-discriminatory bases for exercising its business judgment not to establish official managerial positions at the nascent stage of the BioSystem Program.  And such a decision cannot be pretextual given that no one—male or female—was advantaged by this decision.  Moreover, the undisputed evidence is that only two employees, one a male (Rodriguez) and the other a female (Plaintiff), held themselves out as

4

having interim lead roles in this new endeavor, having been selected to provide leadership responsibilities for BioSystem over other male and female sales team employees alike.[1]

## II. STERICYCLE IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S RETALIATION CLAIMS UNDER TITLE VII AND PUERTO RICO LAW NO. 115.

Plaintiff cannot establish a *prima facie* case of retaliation because she does not sufficiently demonstrate that her protected activity—including her counsel's October 22, 2013 letter (the "October Letter") and November 8, 2013 ADU charge (the "ADU Charge")—was the "but for" cause of the alleged adverse action by Stericycle. *See Ponte v. Steelcase Inc.*, 741 F.3d 310, 321 (1st Cir. 2014) (applying "but for" causation in Title VII retaliation context). This is true even if the Court were to consider—which it should not—her other "informal protests" that Plaintiff claims were protected conduct.[2]

Importantly, Plaintiff now concedes that her April Memo to HR does not constitute protected activity forming the basis of her retaliation claim. *See* Opposition at 32, n. 20. Having done so, there is abundant irrefutable evidence (*see* Section III.A.2 of Stericycle's Memorandum in Support of its Motion for Summary Judgment ("Memo")) of Plaintiff's history of deficient performance and insubordinate conduct that *preceded* the October Letter, the ADU Charge, and her 'informal protests." *See e.g. Kosereis*, 331 F.3d at 217 (affirming summary judgment on

---

[1] Plaintiff appears to claim for the first time in her Opposition that she was discriminated against on the basis of her gender because she alleges Stericycle did not investigate her April 15, 2013 memorandum to HR (the "April Memo"), whereas Stericycle's Human Resources Manager Monica Bloomfield ("Bloomfield") investigated a separate grievance raised by Rodriguez roughly a year later after Plaintiff was terminated.  First, this allegation is noticeably absent from her Complaint (or even her deposition testimony) as a basis for her claim, and Plaintiff cannot now attempt to incorporate this into her deficient gender discrimination claim. *See Rivera-Mercado v. Scotiabank De Puerto Rico-Int'l*, 571 F. Supp. 2d 279, 297 (D.P.R. 2008) (finding plaintiff may not assert new allegations that were not previously asserted at the motion for summary judgment stage).  In any event, her allegation that her April Memo was not investigated is unsupported by the record, and in any event, HR's response to the April Memo relative to an unrelated employee grievance does not establish gender discrimination.

[2] Plaintiff's only complaints that can amount to protected activity under Title VII are those in which Plaintiff demonstrated opposition to alleged practices made unlawful per Title VII; all else must be disregarded.  *See Fantini v. Salem State Coll.*, 557 F.3d 22, 32 (1st Cir. 2009).

retaliation claim where, among other things, there was evidence that plaintiff was disciplined "well before the alleged discrimination took place"). For example, Plaintiff's Opposition admits that Santana issued an admonishment memorandum to her on October 8, 2013 based on her "antagonistic and insubordinate" conduct in a staff meeting. *See* Opposition at 8. Plaintiff's argument, that Santana's accusations were false and the corresponding disciplinary warning was unfair, simply misses the point. This memorandum was issued two weeks *prior* to the October Letter to Stericycle from Plaintiff's counsel, which was the earliest date of any allegedly protected conduct engaged in by Plaintiff. *See* Opposition at 32, n. 20. Therefore, the memorandum—true or false, fair or not—could not have been issued in retaliation for any alleged protected activity. And as previously discussed by Stericycle, there were several additional incidents of Plaintiff's poor performance and misconduct that similarly were documented before any such alleged protected activity. *See* SUMF ¶¶ 62-65.

In this context, Plaintiff's allegations of "adverse actions" that followed the alleged protected activity are nothing more than a request that this Court act as a "super-personnel department" to second-guess each and every disciplinary action with respect to Plaintiff. *See Bermudez-Rosa v. Kelly Servs., Inc.*, 815 F. Supp. 2d 475, 489 (D.P.R. 2011) ("[C]ourts in employment discrimination cases may not substitute judicial judgments for the business judgments of employers."); *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 825 (1st Cir. 1991) ("Courts may not sit as super personnel departments, assessing the merits—or even the rationality—of employers' nondiscriminatory business decisions."). Ironically, Plaintiff first attempts to lay blame on Bloomfield for her decision to delay taking disciplinary action against Plaintiff so Bloomfield could take the time to review the documentation related to the incident as well as Plaintiff's prior disciplinary records. *See* Opposition at 10-12. It is unclear how Bloomfield's thorough and measured approach supports Plaintiff's allegations of retaliation.

6

Plaintiff then pivots to her central argument to support her claim of retaliation, namely that at Bloomfield's behest (the same Bloomfield who is accused by Plaintiff of delaying discipline), Stericycle deviated from its policy for progressive corrective action, including improper administration of a PIP. Plaintiff begins its argument by admitting, as it must, that Stericycle's policy expressly provides that "Stericycle reserves the right to 'skip steps' in the disciplinary process when justified by circumstances and severity of the offense. We also may utilize a performance plan in lieu of any step." *See* Opposition at 15.

Notwithstanding the full discretion that Stericycle clearly reserved to itself, Plaintiff engages in what can be charitably described as a convoluted argument that another policy document (that expressly sets forth only "guidelines") somehow legislated specific steps and accompanying actions that Stericycle was required to follow but did not. *See* Px 10. Examination of this argument reveals that it is nothing more than a request by Plaintiff that the Court flyspeck the PIP form and PIP process to pass judgment on what Plaintiff says would have been a better process with better documentation. Respectfully, that is not the job of this Court. *See Bermudez-Rosa*, 815 F. Supp. 2d at 489; *Mesnick*, 950 F.2d at 825.

Instead, the Court can and should take notice that the PIP on its face accurately summarized Plaintiff's prior performance issues (whether or not Plaintiff disputes the underlying facts) and provided her with sufficient notice of the type of conduct going forward that would be deemed unacceptable. Even her own recitation regarding her refusal to sign the PIP, demonstrates she continued at that juncture to engage in the same type of insubordinate conduct that had become her trademark. She was not simply signing under protest; she had refused to follow the PIP going forward. And, finally, she was terminated for her failure to be in attendance at a critical customer installation, a fact that was brought to Stericycle's attention by a

7

third party contractor who would have no basis or motivation for retaliatory conduct.[3] Plaintiff, herself, admits she was not present for significant portions of the installation, as required. Instead, she argues that she was not at the installation because initially her car broke down and later she needed to go to the office to get money for hors d'oeuvres the next day, speculating that if she did not, she would receive other discipline. *See* Opposition at 24. Tellingly, she does not and cannot contend that she ever reached out to her supervisor to seek direction as to where he preferred her to be, instead relying totally on her baseless conjecture that had she not gone to the office, she also would have faced discipline. On the basis of these facts alone, Plaintiff fails the "but for" test.

But also there are numerous well-documented emails and memos of Plaintiff's ongoing performance issues occurring both before and after any alleged protected conduct. These performance issues were documented and observed by multiple supervisors, co-workers, and clients and technicians with whom Stericycle contracted. Neither Plaintiff's own belief that her performance was not deficient and her behavior not insubordinate, nor her repeated attempt at justifying her actions, is relevant in this context. *See Navedo*, 848 F. Supp. 2d at 192-93 (noting plaintiff's "own belief" that he was not at fault for actions underlying a client complaint "does not advance his pretext claim" where it was evident that the client perceived plaintiff was at fault

---

[3] Plaintiff argues that the complaint from the third party contractor regarding Plaintiff's impermissible conduct during the Hospital Santa Rosa installation, along with other similar complaints, is inadmissible hearsay. *See, e.g.*, Opposition at 25, n. 16. As is the case here, such complaints are routinely admitted for non-hearsay purposes, such as demonstrating that there were complaints brought to the attention of Stericycle management and that these complaints were accounted for in providing corrective action to Plaintiff. *See, e.g.*, *Navedo v. Nalco Chemical, Inc.*, 848 F. Supp. 2d 171, 181 (D.P.R. 2012) (admitting statements containing client complaints about plaintiff's performance for the *non-hearsay* purpose of showing that plaintiff's supervisor in fact received complaints about plaintiff's performance from clients and for evaluating the effect this had on the listener, *i.e.*, plaintiff's supervisor, such as his decision to recommend that plaintiff be fired); *Rojas-Ramirez v. BMJ Foods Inc.*, 2011 WL 693621, at *4 (D.P.R. Feb. 24, 2011) (admitting employees' statements as non-hearsay evidence as evidence of information submitted to the employer as part of an investigation and for the purpose of establishing a legitimate, non-discriminatory reason for employer's decision to terminate plaintiff); *Garcia v. Sprint PCS Caribe*, 841 F. Supp. 2d 538, 544-45 (D.P.R. 2012) (admitting evidence of complaints against plaintiff by her subordinates and customer as exceptions to the hearsay exclusionary rule).

and reported it to the supervisor); *see also Torrech-Hernandez v. Gen. Elec. Co.*, 519 F.3d 41, 49 (1st Cir. 2008) (when determining whether an employee's performance met employer's legitimate expectations, "an employee's perception of himself is not relevant. Rather it is the perception of the decision maker which is relevant") (internal quotation and citation omitted). Regardless of how Plaintiff twists these errors, they occurred and were observed by multiple parties; these formed a sufficient basis for the corrective actions taken and also demonstrate that her alleged protected activity could not have been the "but for" cause of the PIP, the suspension and the termination.[4]

### III. STERICYCLE IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S WRONGFUL DISCHARGE CLAIM UNDER PUERTO RICO LAW NO. 80, AND PUNITIVE DAMAGES MUST BE DISMISSED.

Based on the foregoing, and as set forth in Stericycle's Memorandum in Support of its Motion for Summary Judgment and corresponding briefing (*see* Dkt. No. 81), Stericycle has established "just cause" for Plaintiff's dismissal, and, therefore, Plaintiff's wrongful discharge claim must be dismissed. *See* Memo at Section V. Further, despite Plaintiff's allegations that Stericycle's purported "deviation" from its policies constituted "wanton conduct," there is no

---

[4] Stericycle denies Plaintiff's contention that certain alleged retaliatory conduct—including Plaintiff's alleged exclusion from a golf tournament and Mr. Santana's email requesting Plaintiff to discontinue her insubordinate behavior—constitute materially adverse actions giving rise to her retaliation claim. *See Colon-Fontanez v. Municipality of San Juan*, 660 F.3d 17, 36-37 (1st Cir. 2011); *Echevarria v. AstraZeneca, LP*, 133 F. Supp. 3d 372, 394; *see also* Memo at 16, n. 5. Moreover, Plaintiff's argument that Stericycle waived its right to dismissal on Plaintiff's retaliation claim on the basis of Plaintiff's suspension is misplaced. Plaintiff is precluded from alleging the suspension was an adverse action as part of her Title VII retaliation claim because she failed to exhaust her administrative remedies with respect to this claim. *See* Memo at 3, n. 1 (noting Plaintiff's Second ADU Charge includes allegations of retaliation as relates to *only* Plaintiff's placement on a PIP and termination); *Velazquez-Ortiz v. Vilsack*, 657 F.3d 64, 71-72 (1st Cir. 2011) ("scope of the federal court complaint is constrained by the allegations made in the administrative complaint"). In any event, Stericycle addressed Plaintiff's suspension in its Memo in support of its motion for summary judgment and corresponding exhibits, and established the direct link between Plaintiff's refusal to accept the PIP and placement on a brief suspension while she took vacation leave. *See* Memo at 21-22. Stericycle also set forth ample arguments in its Memo regarding the legitimate, non-discriminatory reasons for its decisions with respect to Plaintiff (among other things, as relates to her placement on a PIP, suspension for refusal to sign the PIP, and ultimate termination).

evidence that Stericycle in any way acted with malice or reckless indifference to warrant punitive damages, and these, too, must be dismissed.  *See* Memo at Section VI.

## CONCLUSION

For the foregoing reasons, and reasons set forth in its Memo, Stericycle respectfully requests that this Court grant summary judgment in favor of Stericycle on all of Plaintiff's remaining claims and award any other further relief as this Court deems just and appropriate.

**RESPECTFULLY SUBMITTED.**

**IT IS HEREBY CERTIFIED** that on this date, a copy of the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system which sends notification of such filing to all attorneys of record.

In San Juan, Puerto Rico, this 13th day of January, 2017.

/s/  *Luis D. Ortiz Abreu*
Luis D. Ortiz Abreu (USDC-PR 122113)

/s/  *Javier G. Vazquez Segarra*
Javier G. Vázquez Segarra (USDC-PR 218414)

Goldman Antonetti & Córdova, LLC
P.O. Box 70364
San Juan, P.R. 00936-0364
Tel.: (787) 759-4110; (787) 759-4113
Fax: (787) 474-2323; (787) 474-2374
E-mail: lortiz@gaclaw.com
E-mail: jvazquez@gaclaw.com

/s/  *Brian J. Gold*
Brian J. Gold (*pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
Tel.: (312) 853-7000
Fax: (312) 853-7036
E-mail: bgold@sidley.com

*Attorneys for Defendant Stericycle of Puerto Rico, Inc.*